**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 20-cr-183 (RCL)** |
| **v.** | : | |
| | : | |
| **CODY MICHAEL TARNER** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS - IDRA**

The United States of America, by and through the United States Attorney for the District of Columbia, files this opposition to the defendant's Motion to Release Mr. Tarner and Dismiss Indictment. The motion should be denied for several reasons. First, the defendant's motion is moot, the defendant having been evaluated and restored to competency. Second, and relatedly, the defendant is judicially estopped from moving for release and to dismiss the indictment because he acquiesced in any delay.  Third, and also relatedly, the defendant waived or forfeited any objection by waiting more than eighteen months *after* the evaluation and restoration to seek, not compliance with any statutory provision, but a dismissal of the charges. Fourth, the defendant was afforded a hearing under 18 U.S.C. §§ 4241(b) and 4247(b) and this Court's order so states. Fifth, the defendant relies heavily, if not exclusively, on the District of Columbia District Court's recent decision in *United States v. Carter*, 583 F. Supp. 3d 94 (D.D.C. 2022), but that case's reasoning is inapplicable to this case, and the reasoning was flawed. Sixth, dismissal is not a proper remedy for any Insanity Defense Reform Act ("IDRA") violation under these circumstances. The defendant's incarceration and hospitalization did not violate the IDRA, or the Speedy Trial Act, and the motion should be denied.

1

Additionally, the government objects to these filings being placed under seal. The defense pleading contains no personal identifying information (PII) or confidential mental health information, nor does the government's response. The government has not sought to publicly file any mental health report in advance of any open proceeding. There is a common law presumption of public access to judicial records, and the defendant has not made a sufficient showing, or any showing, to overcome the presumption of public filings.

### Introduction and Background

Defendant is charged by indictment with one count of Arson, in violation of Title 18 U.S.C. § 844(i), and one count of Destruction Against Any Property of the United States, in violation of Title 18 U.S.C. § 1361. On July 15, 2020, the defendant drove onto the United States Supreme Court's property located at 1 First Street Northeast, Washington DC, and parking his vehicle in an employee only parking spot. *United States v. Tarner*, 1:20 CR 183 (RCL), ECF No. 1. The defendant got out of his car and walked around the Supreme Court property.  The defendant then returned to his car and pulled out a red gas can. At approximately 1:48 PM, the defendant was observed on security camera footage pouring an unknown liquid onto three Supreme Court Police unmarked vehicles parked in Supreme Court employee only parking spaces.



0-202-07-15 13-43-00-300 at 13:47:45 elapsed time

While pouring the liquid on the vehicles, it was observed that some of the liquid was splashing onto his person and clothing.  The unmarked vehicles had emergency police lights visible from the outside of the vehicles, and one of the vehicles had emergency police lights on the roof of the vehicle. The defendant was then seen lighting one of the vehicles on fire resulting in a violent ignition of the liquid.



0-202-07-15 13-43-00-300 at 13:47:58 elapsed time

This action resulted in the defendant being engulfed in the fire causing severe burns and injuries to himself.



0-202-07-15 13-43-00-300 at 13:47:59 elapsed time

Officer Grable, an officer with the Supreme Court Police Department, was on the First Street sidewalk of the Supreme Court on a fixed security post where she observed smoke and flames and heard a large explosion near the intersection of First Street and Maryland Avenue, Northeast. *Tarner*, 1:20 CR 183 (RCL), ECF No. 4, pg. 3. Officer Grable observed Tarner walking away from the explosion with burns and smoke coming from his clothing. Officer Grable called for assistance and started administering first aid to Tarner. While Tarner was committing the acts of arson and destruction of property at the Supreme Court of the United States, Tarner was observed by Supreme Court Police security camera footage with a bandana covering part of his face. After the incident, the bandana was located in close proximity to defendant. *Tarner*, 1:20 CR 183 (RCL), ECF No. 4, pg. 3.

During post arrest interviews, defendant admitted that he was the person that intentionally started the fire with 87 octane unleaded gasoline he had purchased in Pennsylvania for that

purpose.  The investigation revealed that Tarner had had several encounters with law enforcement in which he has expressed what can be referred to as anti-government and militia extremist ideologies. *Tarner*, 1:20 CR 183 (RCL), ECF No. 4, pg. 6. Tarner has claimed to be the leader of a particularly identified militia group.  Tarner has told multiple local and federal law enforcement agencies that he was the leader of the group and has created an online Facebook group page named after the identified militia group. That Facebook page states in the group's biography that, "[The militia group] is a Stateless NGO That has both Tactical [sic] & Diplomatic Wings & Calls For The Destruction of The Ink Machine of the United States Government." The "Impressum," or what is commonly known as the "about us" section of the Facebook group page, provides, "We Want to Kill you." *Id*.

One police encounter with Tarner occurred on February 12, 2020.  The defendant was stopped by the U.S. Capitol Police on U.S. Capitol grounds, where he was observed taking photographs of official government vehicles and license plates used by U.S. Capitol Police in the protection of members of the United States Congress. During this incident, U.S. Capitol Police interviewed the defendant during which he conveyed pro-militia extremist ideologies with the stated objective of negotiating payment from the U.S. government. He stated to officers that he was at the Capitol to "negotiate to stop a civil war." Additionally, Tarner told officers that he was at the Capitol to "negotiate to get 80 million dollars" so he would not have to fulfill and collect the bounty Iran placed on the President of the United States. Tarner stated that if he did not receive his payment he would "raid the town" and "hold the area" on Capitol Hill for an hour. Tarner told officers that he knew how to build a nuclear bomb and would do so if his payment was not received. *Id*.

On February 21, 2020, Tarner posted on his Twitter profile a photo of police officers and

stated, "Here's a Picture of some Yankees 12Feb20 looking Incompetent They opened a Federal Investigation into me Mixed Feelings about it, But I suppose it was appropriate for now on their end But I have to retaliate proportionally and make them uncomfortable in this give and take."

On April 17, 2020, law enforcement observed the following post on defendant's militia group's Facebook page: "Move to MOPP LEVEL 4 Prepare for Mutiny Total Authority must be Challenged All Personnel to Report to Facilities 4 and 7 in The Green zone and make Immediate preparations Yankees have reached Unsurvivable rate and must be administered directly No Bounty is worth Anarchy Let us take the entire portion unto ourselves instead Assume Protocol 2." *Id*.

On April 23, 2020, Tarner went to the White House complex and told a United States Secret Service officer that he would like to jump the White House fence, but a few minutes later advised that he had no desire to jump the fence. On April 24, 2020, the U.S. Secret Service observed several comments on Tarner's social media accounts regarding nuclear weapons and being denied "the bounty." That same day, U.S. Secret Service officers again encountered Tarner at Lafayette Park across the White House. Tarner told the officers that the U.S. Secret Service should be worried about the world blowing up. Tarner initially told officers that he was going to set off a thermonuclear device, but later said he would not set off the device, and said "you are" when talking to the officers. Tarner stated that he would not set off the device, but hoped the government would set off the device because he wanted the world to blow up. *Id*.

Tarner also told the Secret Service officers that he had visited the U.S. Capitol and informed U.S. Capitol Police that he wanted to take over the Capitol and to set off a thermonuclear weapon in Washington, D.C. Tarner told the U.S. Secret Service that he wanted to set off the explosion "to gain notoriety." He went on to say that he hated President Trump and wanted to

convince him that "the most dangerous thing to humans is another human." The defendant claimed that he did not personally want to carry out his mission, but that the U.S. Secret Service "would do it themselves." *Id*.

On May 23, 2020, a friend of the defendant's reported to the Hagerstown, Maryland Police Department that Tarner was espousing violence and that Tarner hoped to terrorize the country with bombs and nuclear weapons. On or about June or July 2020, another close acquaintance of the defendant reported to police that he believed Tarner was a user of methamphetamine. A relative of Tarner has also stated to law enforcement that Tarner was a drug user. Drug paraphernalia was recovered by law enforcement from the target vehicle.

On July 9, 2020, a few days before the attack at the Supreme Court, the defendant was stopped by the Allegheny Township Police Department in Pennsylvania. During the stop, Tarner stated that he knew how to make bombs and that he knew the compounds of bomb making material. The officer reported that Tarner had made vague threats during the stop.

After his arrest, on August 17, 2020, the government made an oral motion for a forensic examination of the defendant. A pre-trial services report provided that Tarner suffers from schizophrenia. That motion was denied. Minute Entry, 8/17/2020. The defendant was indicted on September 8, 2020. *United States v. Tarner*, 1:20 CR 183 (RCL), ECF No. 6. The defendant was arraigned on September 17, 2020, and defense counsel requested a pre-plea criminal history calculation report. At that time, the defendant agreed to, or did not oppose, a continuance and tolling of the speedy trial clock until November 13, 2020. At the November 13, 2020 status conference, the defendant agreed to, or did not oppose, a continuance and tolling of the speedy trial period until February 12, 2021. At the February 12, 2021 status conference, the defendant agreed to, or did not oppose, a continuance and tolling of the speedy trial period until April 22, 2021. At that hearing, the defendant also requested a competency evaluation at Butner, North

Carolina, which was granted.  *See* Competency Order, *United States v. Tarner*, 1:20 CR 183 (RCL), ECF No. 4, pg. 3. The Competency Order specifically provided that "It is further ORDERED that until such time as defendant is found competent to stand trial, any 'delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the 'defendant' will be excluded pursuant to 18 U.S.C. § 3161 (h)(l)(A) in computing time for all purposes and calculations under the Speedy Trial Act." *Id*.

Pursuant to the Court's competency order, the government filed periodic status reports appraising the Court, and defense counsel, of the progress of the competency evaluation. *Id*. On April 15, 2021, the government notified the Court that the defendant had been transported to Butner Medium FCI on or about April 9, 2021 for his competency evaluation.  ECF No 14. In a letter filed under seal on April 22, 2021 (dated April 15, 2021) the warden of FMC Butner informed the Court that per C.D.C. and B.O.P. guidance, Mr. Tarner was placed on quarantine status when he arrived at the facility, which would "last approximately 21 days." (Dkt. No. 15.) The warden therefore requested not only that the 30-day evaluation period begin 21 days after Mr. Tarner's arrival at FMC Butner, i.e., on April 29, 2021, but that it be extended for an additional 15 days, to end on June 11, 2021.  *See* defense motion to dismiss indictment and release the defendant, pg. 3. According to the defense pleading, and the recitation of the in-Court hearing, the Court stated:

> I don't think there's anything I can do other than grant that anyway
> – unless y'all know some other thing I can do.

*Id*., at 4. There is no suggestion, or indication, that the defendant objected to the extension.  At the April 22, 2021 status conference, the Court granted the government's request for an extension of time to conduct the competency evaluation, which was granted.

On August 9, 2021, the Court held a hearing and found the defendant to be incompetent. The Court's order provides, in part:

> After holding a hearing, and with the consent of the Government and defense counsel, the Court adopts in full the medical opinion set forth in the competency evaluation report. Accordingly, for the reasons set forth in the competency evaluation report, the Court finds by a preponderance of the evidence that Tarner "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241 (d). The Court thus ORDERS Tarner committed to the custody of the Attorney General. *See id*.

ECF No. 18. Thereafter, as directed, the government filed status updates to keep the Court and defense counsel appraised of the progress of the transportation and evaluation of the defendant. Between August 9, 2021 and November 17, 2021, the government filed nine status reports tracking the progress of the defendant's transportation and evaluation. At no point during that period did the defendant file anything objecting to the delay.  On November 18, 2021, the defendant filed a motion styled "Motion for Immediate Transfer to Butner FMC." In its January 14, 2022 status update, the government reported that the defendant had been transferred to Butner on January 13, 2022. On or about May 12, 2022, the Butner Complex Warden notified the Court that the defendant's restoration evaluation had been completed, which was within the four-month period. Additionally, the evaluators requested:

> He has demonstrated some improvement in the symptoms of his mental illness with psychiatric medication management and his competency-related abilities are developing. As such, with ongoing restoration efforts, his prognosis is good and he will likely be restored to competency in the future. Thus, we respectfully request that the Court grant another 120-day evaluation and treatment periods, pursuant to Title 18, U.S.C. § 4241(d).

*See* letter dated May 12, 2022, pg. 14.  As defense counsel acknowledges, the Court issued an order authorizing the extension of the evaluation period.  ECF No. 33, *see also*, motion for release and dismissal of the indictment, pg. 6.  On or about November 10, 2022, the Butner Complex Warden notified the Court that the defendant's competency had been restored and issued a "Certificate of Restoration of Competency to Stand Trial." At no time during the period from November 19, 2021 until October 20, 2023 did the defendant file any objection to the timing or

delay in evaluating the defendant.

**A.      Pandemic delays, the increase in competency referrals, and BOP's response**

The global COVID-19 pandemic has significantly impacted restoration proceedings within BOP as well as transports by USMS and JPATS.   The information provided by the BOP demonstrates that there has been a "tremendous increase" in court orders for restorations, impacting waitlists and admissions for restoration over the past 2-3 years.   *See* Petre statement, previously filed in *United States v. Belgarde*, Case No. 3:21-cr-00058 (D. N.D., Feb. 15, 2023), attached as Exhibit 1.  As the declaration of Dr. Boutwell, Chief of the Psychological Evaluations Section for the Federal Bureau of Prisons, explains, the BOP designated Tarner for restoration at FMC Butner. Boutwell Declaration, attached as Exhibit 2.  FMC Butner is one of a small number of federal medical facilities where inmates are presently sent for competency restoration treatment under 18 U.S.C. § 4241(d), and there are only three such facilities that provide the level of care required for Tarner—MCFP Springfield, FMC Butner, and FMC Devens. *Id.*  There is a significant wait time, currently six to eight months, for entry into one of these facilities due to limited staffing, resources, and bed availability. *Id.* Each BOP medical facility has a specific number of intakes per month, which is determined (and limited) by each facility's resources. *Id.*  The order in which patients are assigned beds for evaluation and restoration is based on the date of the order committing the individual pursuant to § 4241(d). *Id.*  Significantly for this analysis, the restoration procedure is a time-intensive comprehensive process that consume the entire four-month period, as it should when dealing with complex mental health issues.  As even a cursory review of the defendant's 4241(d) report makes clear, the time spent at FMC Butner was intensive including (1) the administration and monitoring of medication, (2) meetings with occupational therapists, (3) private counseling, (4) group counseling, (5) competency restoration group sessions, and (6) other

related and intensive interventions. *See* Forensic Evaluation Report dated November 15, 2022, pgs. 7-11.  In short, the psychological services provided to the defendant were significantly more intensive than a simple short evaluation, or the mere prescribing of appropriate medications.  Not by accident, the 4241(d) process is considerably more intensive than the original 4241(b) competency referral, which can take thirty days, plus an additional fifteen days.

As this Court has recognized, "in light of the 'exigent circumstances created by the COVID-19 pandemic,' Chief Judge Howell has entered a District-wide Standing Order excluding time through August 31, 2021 under 18 U.S.C. § 3161(h)(7)(B)(i) in all criminal cases 'that cannot be tried consistent with [] health and safety protocols and limitations.' *See* Standing Order No. 21-10 (BAH) (Mar. 5, 2021)." *United States v. Klein*, 533 F. Supp. 3d 1, fn. 12 (D.D.C. 2021).  Chief Judge Howell's Standing Order No. 21-79 further provided that:

> Due to the ongoing circumstances, as detailed above and in prior Standing Orders, and because conducting jury trials without the health and safety protocols and limitations before February 18, 2022, would jeopardize public health and safety and pose significant risks of exposure and transmission of the virus to trial participants, which would make continuation of a trial impossible or result in a miscarriage of justice, *see* 18 U .S.C. § 3161 (h)(7)(B)(i), the Court now finds that for those cases that cannot be tried consistent with those health and safety protocols and limitations, the additional time period from December 15, 2021 through February 18, 2022 is excluded under the Speedy Trial Act as the ends of justice served by the continuances to protect public health and safety and the fair trial rights of a defendant outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. § 316l(h)(7)(A). The presiding Judge in any criminal case for which a jury trial is postponed under this Order may make any additional findings and exclude additional time, as necessary and appropriate, regarding the scheduling of any new date for trial.

Standing Order No. 21-79, dated December 13, 2021, attached as Exhibit 3.

## ANALYSIS

As an initial matter, the government objects to the filings being made under seal. There is a common law presumption of public access to judicial records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), *United States v. Munchel*, 567 F. Supp. 3d 9, 15 (D.D.C. 2021) (a strong

presumption of public access to judicial records). The government notes that the defense filing contains no personal identifying information (PII) or confidential mental health information.[1] In fact, the psychologist evaluating the defendant specifically discussed with him the limits of confidentiality. *See* Forensic Evaluation dated November 15, 2022, pg. 1. Likewise, the government's response here includes no PII or confidential mental health information. The pleadings related to the defense Motion to Release Mr. Tarner and Dismiss Indictment should be public and not filed under seal.[2]

Additionally, the government points out that the defendant comments and gestures that "the Speedy Trial Act and IDRA work together to require the timely resolution of cases" citing to *United States v. Carter*, 583 F. Supp. 3d 94, 99 (D.D.C. 2022). Motion to Dismiss, pg. 7. The defendant, however, does not allege a Speedy Trial Act (STA) violation, nor can he since all relevant periods were excluded without objection, or were excluded by statute by virtue of the fact that the defendant had initially been found incompetent at the defendant's request. *See* 18 U.S.C. § 3161(h)(4) which requires the exclusion of "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." *United States v. Beler*, 2019 U.S. Dist. LEXIS 192631, 2019 WL 5789747 (D.D.C. 2019), and *United States v. Romero*,

---

[1] As recently as September 8, 2023, the defendant acknowledged and understood that his mental health information could be made public. "Mr. Tarner was interviewed by the undersigned at the Correctional Treatment Facility, DC Department of Corrections on 20230908. Mr. Tarner was informed of the non-confidential nature of this evaluation. He was informed that a full report of the evaluation would be sent to his defense counsel and that the evaluator may be called to testify, and that the information obtained from this evaluation, as well as the conclusions thereof, could be made public. He voiced understanding of these warnings and consented to the evaluation." Neurospychological Assessment Report, dated October 13, 2023, pg. 1.

[2] The government notes that the Court publicly filed, as it should, the order finding the defendant incompetent and noting the conclusions of the competency report "In his evaluation, Dr. Rigsbee diagnosed Tarner with Schizophrenia and opined that Tarner is presently unfit to stand trial." ECF No. 18.

833 F.3d 1151 (9th Cir. 2016).

The overwhelming consensus of federal courts is that the period of delay between the date upon which a defendant is found to be mentally incompetent and the date upon which a defendant begins treatment is excluded from speedy trial calculations in its entirety under the "mental incompetency" exclusion, 18 U.S.C. § 3161(h)(4). *See United States v. Bashar*, 3 F. Supp. 3d 541, 543 (E.D. Va. 2014) (holding that, where delay did not involve defendant's actual transportation to a federal medical facility, but occurred based on waiting for available bed space after the court had already found the defendant not competent to stand trial, the delay was automatically excludable, without time limit, per § 3161(h)(4)."); *United States v. Lewis*, 484 F. Supp. 2d 380, 390-92 (W.D. Pa. 2007) ("[T]o the extent that there was unreasonable delay in transporting Defendant to [a medical facility to restore mental competency], the delay was also independently attributable to his state of incompetency and that time is thereby fully excludable under § 3161(h)(4)."); *United States v. DeGideo*, Case No. CRIM 04-100, 2004 WL 1240669, at *3-5 (E.D. Pa. May 18, 2004) (holding that delay in treatment following a finding of mental incompetency is excludable under § 3161(h)(4) because "[t]he delay in treatment was subsidiary to the prior finding that Defendant was mentally incompetent.");*United States v. Silva*, Case No. 11-cr-00382-REB (D. Colo. Oct. 18, 2012) (Blackburn, J.) [Doc. 38] (holding that "[u]nder the Speedy Trial Act, exclusion of [delay in transporting the defendant to a suitable medical facility following the court's order of mental incompetency] from the calculation of the speedy trial deadline is controlled by § 3161(h)(4)."); *United States v. Bell*, Case No. 1:05-CR-30-TWT, 2007 WL 1087355, at *2-5 (N.D. Ga. Apr. 5, 2007) (same); *United States v. Triumph*, Case No. 3:02-CR-81-JBA, 2004 WL 1920352, at *2-3 (D. Conn. Aug. 24, 2004) (same); *United States v. Lazaro-Cobo*, Case No. CR-10-846-PHX-JAT, 2011 WL 5006516, at *1-2 (D. Ariz. Oct. 20, 2011)

(holding that delays attributed to a lack of available bed space at a medical facility following an order finding mental incompetency are excludable under 18 U.S.C. § 3161(h)(4)); *United States v. Bauman*, Case No. 07-20052-01-KHV, 2008 WL 5111135, at *2-4 (D. Kan. Dec. 4, 2008) (holding that the period of delay in transporting a defendant to the hospital after a finding that he was mentally incompetent "is excludable under 18 U.S.C. § 3161(h)(4) as delay 'resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial.'").

The plain language of 18 U.S.C. § 3161(h)(4) provides that "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial" is excludable from speedy trial calculations. In the instant case, Mr. Tarner is not awaiting an initial competency evaluation; he has already been found incompetent to stand trial. The delay resulted from the need to obtain mental health treatment to attempt to restore him to competency, which was not available immediately due to a lack of available bed space at medical facilities, rather than any issues related to transportation. *See Kabinto*, 2009 WL 2358946, at *2 ("The delay between Defendant's arrival at FTC on March 31 and his ultimate arrival at the Springfield facility on June 5, 2009, is also excluded because it resulted not from transportation problems involving the USMS, but from this Court's finding that Defendant is mentally incompetent, the need to treat that incompetence, and overcrowding at the mental health facility. . .The delay in this case was directly related to Defendant's need for treatment."); *Morales*, 2008 WL 552662, at *3 ("[T]he unequivocal language of 18 U.S.C. § 3161(h)(4) excludes the period of time a defendant is deemed to be incompetent to stand trial, whatever the reason for delay may be."); *Lewis*, 484 F. Supp. 2d at 390-91 ("[T]o the extent there was unreasonable delay in transporting Defendant to USMCFP, the delay was also independently attributable to his state of incompetency and that time is thereby fully excludable under § 3161(h)(4).").

A.      **The defendant consented to the delays and/or waived any objection thereto**

The defendant's acquiescence in, and failure to object to, specific periods of delay in transporting and evaluating the defendant operate to bar his claims here under at least three judicial doctrines: mootness, judicial estoppel, and waiver or forfeiture. The defendant's claims here are moot because his evaluations took place more than a year prior to the filing of this motion. The defendant is further estopped from complaining about any delay in his transportation or evaluation because he waited until more than a year had elapsed before seeking a dismissal and release. The defendant further waived, or forfeited, any claim of unreasonable delay because, other than one written filing on November 18, 2021, the defendant never objected to any period of delay in transportation or evaluation. The government notes that the defendant was transported and evaluated less than 60 days after the November 18, 2021 filing, and that that time period was at the height of the worldwide Covid-19 Pandemic. Thereafter, the defendant never objected to any period of delay in transportation or evaluation.

1.      **The defendant has been hospitalized, and restored – his claims are moot**

The defendant's claim is moot because he has already been evaluated and restored to competency and, accordingly, the Court cannot grant the defendant relief that he claims the timelines in the IDRA were designed to address.  *United States v. Silva*, 2023 U.S. App. LEXIS 9573 *, 2023 FED App. 0173N, 2023 WL 3001570 (6th Cir. 2023) ("The appeal of the denial of appellant's motion to dismiss the indictment against him or to order his hospitalization, pursuant to court's order under 18 U.S.C.S. § 4241(d)(1), for his competency-restoration evaluation was ordered dismissed as moot because neither of the appellant's requested forms of relief was available to him anymore as he had been hospitalized . . ."), *see United States v. Calderon-Chavez*, 22-CR-01664-DCG-1, 2023 U.S. Dist. LEXIS 148679 (W.C. TX, Aug., 18, 2023) (nine months

passed since 4241(d) commitment order, if the defendant is evaluated in compliance with this order, Due Process claim becomes moot), *United States v. Hatter*, 2015 U.S. Dist. LEXIS 46896, 2015 WL 1511015, at *2 ("Hatter was transferred to Butner . . . and is currently receiving restorative treatment. As such, the Court finds that any due process challenge based upon any delay while Hatter awaited restorative treatment is moot."); *United States v. Berard*, 2023 WL 3178793, at *8 ("Berard has already been hospitalized. Therefore, the government has provided the remedy—hospitalization—that courts most commonly order when the government has failed to timely transport a committed defendant to a hospital. And neither this court nor Berard has been able to identify any case where a court has dismissed an indictment for lack of a timely transport after the government has admitted the defendant to a suitable facility."); *United States v. Vanarsdale*, 2023 U.S. Dist. LEXIS 139111, 2023 WL 5094011, at *3 ("[T]he remedy routinely issued by courts is an order requiring the government to admit the defendant to a suitable facility within a specified time period. Such a remedy is not necessary here as [the d]efendant has already been transferred to the facility."). The government further notes that *United States v. Carter*, 583 F. Supp 3d 94 (D.D.C. 2022) does not help defendant since the defendant in *Carter* had not been evaluated at the time the Court entered its dismissal order.

> **2.      The defendant is judicially estopped from making his claims – he acquiesced in, and did not object to, any delay in evaluating or restoring him to competency**

The defendant is also judicially estopped from making his dismissal claim because he waited until the claimed deadlines had passed to make his motion to dismiss. The doctrine of judicial estoppel acts to prevent the parties "from 'playing fast and loose with the courts' by 'deliberately changing positions according to the exigencies of the moment.'" *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 (2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750,

(2001)). Here, the defendant's only contemporaneous effort at seeking any redress for any potential violation of 4241(d) was his November 18, 2021 motion "For Immediate Transfer to Butner FMC." ECF No. 28.  Before the Court could act on the motion, the defendant was transferred to Butner and was undergoing competency restoration treatment. The government further notes that, with respect to any alleged violation of 4241(b), the Court ordered an extension with the defendant's agreement, or lack of objection.  He is therefore estopped from, eighteen months later, seeking a dismissal for an alleged violation that was remedied before filing his pleading. The motion should be denied.

3.     **The defendant waived or forfeited any IDRA his claims here – he acquiesced in, and did not object to, any delay in evaluating or restoring him to competency**

To the extent that the defendant now claims for the first time violations of the IDRA timeline, he has waived or forfeited any right to seek redress of those claims since he did not contemporaneously object to any claimed delays. In short, the defendant should not be permitted to "profit" from any gamesmanship used in timing his dismissal and release demand. As an initial matter, the government notes that "Congress did not prescribe dismissal of the indictment as a remedy for violation of the time limits imposed by § 4241(d), as it has, for example, in the context of violations of time limits imposed by the Speedy Trial Act." *United States v. Donnelly*, 41 F. 4th 1102, 1106 (9th Cir. 2022).  But even under the Speedy Trial Act (STA) with its dismissal remedy, the Supreme Court has held that by requiring defendants to notify district courts of any potential exclusions of time within their motions to dismiss and requiring them to renew their motions, waiver also prevents "undue defense gamesmanship." *United States v. Taplet*, 776 F. 3d 875, 880 (D.C. Cir. 2015) *citing United States v. Zedner*, 547 U.S. 489, 502-3 (2006). Consequently, the government suggests, principles of waiver or forfeiture apply not only to a STA violation analysis,

17

but also to an IDRA analysis.

Defendant's conduct here demonstrates that he has waived, or forfeited, any claim to dismissal of the indictment and release from incarceration because he has acquiesced in any delay of the competency proceedings. In his November 18, 2021 filing, the defendant does not claim any violation of the IDRA or the deadlines stated in 18 U.S.C. § 4241(d). Rather, defendant raised the issue of the prison conditions of the D.C. jail, stating:

> To date, more than 3 months have passed since the Court's order. Mr. Tarner has been housed during this time at the DC Jail, whose deplorable conditions are well documented by the U.S. Marshals Service. See, e.g., https://www.washingtonpost.com/dc-md-va/2021/11/05/dc-jail-conditions-transfers/. In its recent report, ECF 26, dated November 7, 2021, the government reported that Mr. Tarner has been designated to Butner FMC. But his "intake date" is not until the week of 12/20/21 - which will be more than 4 months since the Court's order.

Motion for Immediate Transfer, ECF No. 28, pg. 2.  The motion should be denied.

### B.     The defendant's rights were not violated under the IDRA

The defendant's rights were not violated under the IDRA.  In the wake of *Jackson v. Indiana*, 406 U.S. 715, 720 (1972) and the acquittal of John Hinckley Jr. for his attempted assassination of President Ronald Reagan, Congress enacted the IDRA to overhaul the provisions governing pretrial competency determinations. *See United States v. Donnelly*, 41 F.4th 1102, 1105 (9th Cir. 2022); *United States v. Lara*, 2023 U.S. Dist. LEXIS 74172 (D.N.M. May 5, 2023). Under the IDRA, after a defendant is found incompetent, a district court commits the defendant to the custody of the Attorney General; and the Attorney General hospitalizes the defendant for treatment in a suitable facility for such a reasonable time, not to exceed four months, to determine whether he can be restored to competency and if so, for a further period to attempt to restore competency. The text of this statute makes clear that the four-month limitation applies only to the period of hospitalization, and therefore begins to run when the defendant has been hospitalized. *Donnelly*,

18

41 F.4th at 1105, *United States v. Curbow*, 16 F.4th 92, 122 (4th Cir. 2021) (Traxler, J., concurring); *United States v. Magassouba*, 544 F.3d 387, 408 (2d Cir. 2008) ("[W]e construe § 4241(d)(1) to impose a four-month limit only on the Attorney General's authority to hold an incompetent defendant in custodial hospitalization for the purpose of determining the probability of his regaining competency").

The government also notes that the mental health evaluations and restoration process involves complex interventions and evaluations, which are time consuming. They involve the intervention and interaction of licensed psychologists with advanced degrees. Neither the initial 4241(b) competency determination nor the much more involved 4241(d) restoration process is a ministerial act. Rather, both those processes involve the interaction of multiple professionals over a significant period of time, to achieve a reliable outcome. This is not an act like fingerprinting, a mug shot, a DNA sample extraction, or even a ministerial medical procedure. It is unreasonable, bordering on absurd, to think that the time periods outlined in 4241(b) and 4241(d) could meaningfully incorporate the delays inherent in the custodial transportation of dangerous individuals. A cursory review of the defendants Forensic Evaluations demonstrates the quality and quantity of the mental health services provided.

**a.      18 U.S.C. § 4241(b) was not violated**

Defendant cites no legal authority in support of his claim that he is entitled to a dismissal of his indictment and release for any claimed four-day violation of the timeline provide for in 4247(b), which the Court granted without objection by the defendant. *See* Minute Entry, 4/22/2021.  The only authority discussing the issue that the government was able to find was *United States v. Huguenin*, 950 F.2d 23, 27 (1st Cir. 1991) in which the First Circuit Court of Appeals held:

Huguenin's second argument is that the court erred in allowing his commitment to extend to seventy-seven days.  18 U.S.C. § 4247(b) authorizes the court to commit a defendant for a competency examination under § 4241 for "a reasonable period, but not to exceed thirty days," and to extend the commitment for fifteen more days, upon application of the director of the facility to which the defendant is committed, "upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant."  Huguenin's prolonged detention thus does appear to have violated the time limits prescribed in the statute. The record discloses no request for an extension, and the total period of detention, in any case, exceeds the maximum statutory period by more than one month. The violation, however, does not require reversal or a new trial, for it in no way affected the fairness or reliability of the ensuing trial.

*Id*.  The defendant's motion should be denied.

> **b.     The Court properly determined that the defendant was incompetent at a hearing.**

The Court properly determined that the defendant was incompetent on August 6, 2021,

and the Court's consideration of the report was a hearing, although no witnesses were called.

The Court's order expressly stated:

> After ***holding a hearing***, and with the consent of the Government and defense counsel, the Court adopts in full the medical opinion set forth in the competency evaluation report. Accordingly, for the reasons set forth in the competency evaluation report, the Court finds by a preponderance of the evidence that Tarner "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241 (d). The Court thus ORDERS Tarner committed to the custody of the Attorney General. *See id*.

ECF No. 18 (emphasis added).  18 U.S.C. § 4241(c) provides that "The hearing shall be

conducted pursuant to the provisions of section 4247(d)."  18 U.S.C. § 4247(d) provides:

> At a hearing ordered pursuant to this chapter the person whose mental condition is the subject of the hearing shall be represented by counsel and, if he is financially unable to obtain adequate representation, counsel shall be appointed for him pursuant to section 3006A. The person shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing.

18 U.S.C. § 4247(d). Blacks Law Dictionary defines "hearing" to include "A judicial session,

usually open to the public, held for the purpose of deciding issues of fact or of law, sometimes

with witnesses testifying." Black's Law Dictionary 836 (10th ed. 2014). There is no evidence or suggestion that a hearing as contemplated by 18 U.S.C. § 4247(d) was not conducted. The motion should be denied.

    **c.**    **The 18 U.S.C. § 4241(d) four-month period did not start until hospitalization**

    The defendant argues primarily that the time period from when the Court ordered the 4241(d) restoration hospitalization to when the restoration procedure was completed falls under the provision's "not to exceed four months" requirement. Motion to Release Mr. Tarner and Dismiss the Indictment, pg. 13. In making that argument, the defendant relies heavily, if not exclusively, on the District Court decision in *United States v. Carter*, 583 F. Supp. 3d 94 (D.D.C. 2022). *Carter* is distinguishable and does not help the defendant here.  Furthermore, *Carter* was wrongly decided, and should not be followed here.

    *Carter* is distinguishable for at least three reasons. First, *Carter* is distinguishable because the case was dismissed after the government defied the Court's order prior to referral that the defendant must be transported and evaluated during the four-month period.  The *Carter* court made clear that "[b]efore the Court issued the above Order, this Court explained that the government would need to evaluate Carter within the 'four months' that IDRA permits."  583 F. Supp. 3d at 96. After the government gave a status update informing the Court and the parties that the defendant was designated to a facility after the Court's deadline, the Court explained at a status hearing that the timeline "creates a problem under [IDRA] given the deadlines that are set in the statute" and the Court added that, if the government continued its present course, it would need to be prepared to brief whether IDRA "permits any extensions beyond four months." *Id*., at 98. Second, the Court ordered the release of the defendant because the defendant was never evaluated for restoration purposes when the release order was signed. *Id*. ("On January 10, 2022, the

government represented that it had not transferred Carter to Butner"). Third, the Court made clear that "Carter would remain subject to civil commitment under District of Columbia law." 583 F. Supp. 3d at 99.

Here, none of the preconditions for dismissal or release are present. First, this Court never ordered the government to have the defendant's restoration evaluation performed by a date certain. More importantly, the defendant did not object to the timing of the restoration evaluation until more than a year and a half after the restoration evaluation was completed. To be sure, the defendant requested that the defendant be immediately transported to the BOP for an evaluation. Despite the demand coming at the height of the global pandemic, the government transported the defendant a few weeks after the demand. Second, the defendant has been restored, thus mooting the defendant's complaint. Third, there is no civil commitment alternative for the defendant because he has been found to be competent. Rather, the defendant asks the Court to simply release a violent and dangerous defendant out into the public, after he acquiesced in the process of restoration evaluation. The motion should be denied.

The defendant also cites to the District Court decision in *United States v. Gamarra*, 308 F. Supp.3d 230 (D.D.C. 2018), but *Gamarra* does not support the defendant here. First, the delay in *Gamarra* was occasioned at least in part by clerical error that was not discovered by the government for several months. In contrast, here the government updated, and checked on the defendant's status approximately every ten days, and notified the parties and the Court. More importantly, the Court in *Gamarra* did not consider the robust case law interpreting the provisions of 4241(d) to mean that "the four-month maximum applies to hospitalization, not commitment," although the Court did cite to *United States v. Magassouba*, 544 F.3d 387 (2d Cir. 2008). Most damaging the defendant's argument here, the Court in *Gamarra* held that "However, the proper

remedy for this violation is not to dismiss the indictment, but rather to ensure a speedy evaluation under § 4241(d)(2)." 308 F. Supp.3d at 233. That remedy, of course, has already been applied here since the defendant has been restored to competency almost a year before the defendant filed this motion. The motion should be denied.

Moreover, *Carter* was wrongly decided, and has been rejected by many courts, including at least one Circuit Court of Appeal. The core of the defense argument is his claim that the four-month time period identified in §4241(d) begins to run when the Court orders the restoration procedure. At least three Circuit Courts of Appeal have held that the four-month period in §4241(d) begins running upon the *hospitalization* of the defendant, and not upon the issuance of the Court order for restoration. *United States v. Donnelly*, 41 F.4th 1102 (9th Cir. 2022), *United States v. Curbow*, 16 F.4th 92, 122 (4th Cir. 2021) (Traxler, J., concurring), *United States v. Magassouba*, 544 F.3d 387 (2d Cir. 2008).

A very recent District Court case provides a comprehensive analysis of the statute, and the cases supporting that analysis, and discussing *Carter*. *See United States v. Berand*, No. 22-cr-088-01-LM, 2023 U.S. Dist. LEXIS 74921, 2023 WL 3178793 (D. N.H., May 1, 2023). The Court held:

> The plain language of § 4241(d) compels this conclusion. The statute makes clear that once a defendant is found not competent to stand trial, the court "shall" commit the defendant to the custody of the Attorney General. Then, in the next sentence, it states that the Attorney General "shall" hospitalize the defendant for treatment for the reasonable period necessary to determine whether the defendant can be restored to competency. That reasonable period of hospitalization is not to exceed four months. Thus, the four-month maximum applies to hospitalization, not commitment.

*Id.*[3]   Further, the IDRA provides no statutory recourse for delays contrary to the statutory

---

[3] *See also Magassouba*, 544 F.3d at 412-13; *Donnelly*, 41 F.4th at 1104 ("We think the text of the statute makes clear that the four month time limit applies only to the period of hospitalization, and thus begins to run when the defendant has been hospitalized"); *Curbow*, 16 F.4th at 122; *United*

framework, in contrast to the STA.

But saying defendants lack statutory recourse for such delays does not mean that defendants lack all recourse for contesting such delays. Indeed, the Due Process Clause ensures the right to a speedy trial is preserved even where the Speedy Trial Act is not violated. In a decision issued just a few months ago, *United States v. Castrellon*, No. 22-CR-00112-CMA-GPG, 2023 WL 2330688, at *5 (D. Colo. Mar. 1, 2023), a district court in Colorado addressed this issue in a case involving a delay of treatment for restoration to competency based on a lack of a hospital bed for a defendant awaiting treatment to be restored to competency. The Court first found that the Speedy Trial Act excluded the time of the delay under § 3161(h)(4), for the reasons the government has asserted above. The Court then went on to reason, nonetheless, that:

> the Due Process clause ensures that [the defendant's] constitutional right to a speedy trial is preserved even where the Speedy Trial Act itself might not be offended. Under *Barker v. Wingo*, 407 U.S. 514 (1972), the court examines several factors to determine whether the degree of delay has risen to constitutional levels, but before doing so, it must first consider a gatekeeper factor: whether the amount of delay is enough to be presumptively prejudicial. Generally speaking, a pretrial delay approaching one year satisf[ies] that requirement. Here, [the defendant] has been in custody since his arrest on March 14, 2022, a period that is rapidly approaching one year. Because he satisfies the first of the *Barker* factors, the Court

---

*States v. Lee*, No. 1:21-cr-20034, 2022 WL 18275882, at *4 (S.D. Fla. Dec. 27, 2022) (finding that "plain language" of § 4241(d) indicates that four-month time limit applies only to hospitalization), R&R adopted, 2023 WL 168755 (Jan. 12, 2023); *United States v. Belgarde*, No. 21-cr-58, 2022 WL 540932, at *4 (D.N.D. Feb. 23, 2022) (same); *United States v. Jones*, 2020 WL 7127321, at *2 (D. Mont. Dec. 4, 2020) (same); *United States v. Carter*, No. 17-cr-190, 2019 WL 9410160, at *1 (E.D. Wisc. Oct. 16, 2019) (same); *United States v. Smith*, 764 F. Supp. 2d 541, 545 (W.D.N.Y. 2011) (same); *United States v. Reeves*, NO. 3:21-CR-00047-KDB-DCK, 2023 U.S. Dist. LEXIS 156728 (W.D. N.C., Sept. 5, 2023)(same); *United States v. Wazny*, 3:21-CR-247, 2022 U.S. Dist. LEXIS 217071, 2022 WL 17363048 (M.D. PA, Dec. 1, 2022) (Assuming that the length of a defendant's pre-hospitalization custody is not subject to a fixed time-limit); *see also United States v. Bravo-Cuevas*, No. 22-cr-76-PHX-DWL, 2022 WL 3042916, at *2 (D. Az. Oct. 19, 2022) (following *Donnelly*); *United States v. Zapata-Herrera*, No. 14-cr-3639-GPC, 2015 WL 4878319, at *1 (S.D. Cal. Aug. 14, 2015) (finding that § 4241 "does not set a limit on the amount of time that criminal defendants can be incarcerated while awaiting court-ordered competency services").

> examines the remaining ones, namely: (i) the reasons for the delay,
> (ii) the defendant's assertion of or failure to assert his right to a
> speedy trial, and (iii) any prejudice to the defendant from the
> delay.

*Id.* (internal citations and quotations omitted).

Thus, constitutional analysis fills the gaps in the statutory fabric with which the *Carter* court takes such issue. *Id.*; *see Magassouba*, 544 F.3d at 403 (reasoning that two-month delay in hospitalizing defendant awaiting competency evaluation caused by transport challenges did not deny the defendant due process, and defendant's competency proceedings resolved within the reasonable time requirements of due process are excludable under the Speedy Trial Act).

Here, applying the due process analysis does not change the conclusion that any delay the defendant faced in receiving treatment did not violate his rights. The delay in the defendant's hospitalization was not even close to one year—it was roughly five months. *See* ECF Nos. 18 and 31.  This delay is suboptimal, but it is far less than the typical delay that courts around the country generally accept, and does not rise to the level of a constitutional violation.

**d.  The restoration period did not lapse on May 13, 2022**

The defendant further claims that any period of authorized restoration treatment expired on May 13, 2022. As an initial matter, the Court specifically authorized the extension complained of here. In its August 9, 2021 order the Court provided:

> Pursuant to 18 U.S.C. § 4241, the Attorney General shall hospitalize Tarner for treatment in a suitable facility "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 424l(d)(l). ***After four months have elapsed, the Attorney General may hold Tarner for "an additional reasonable period of time until ... his mental condition has so improved that the trial may proceed"*** if this Court finds "that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward," or if "the pending charges against him are disposed of according to law," whichever is earlier. Id. at § 4241 (d)(2).

ECF No. 18 (emphasis added). As previously discussed, defense counsel acknowledges that the Court issued an order authorizing the extension of the evaluation period. ECF No. 33, *see also*, motion for release and dismissal of the indictment, pg. 6. The defendant also cites no law in support of his claim, or suggestion, that the Court's order was insufficient, and the Court's order reflects that the extension was authorized. *See* ECF No. 33. 18 U.S.C. § 4241(d) provides, in part:

> (d) Determination and disposition. If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—
>
> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
>
> *(2) for an additional reasonable period of time until*—
>
>> *(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or*
>>
>> (B) the pending charges against him are disposed of according to law; whichever is earlier.

18 U.S.C. § 4241(d). There is no self-effectuating provision of 4241(b) that requires judicial approval prior to the continuation of treatment, and the defendant cites to none. Moreover, the defendant cites to no authority stating or suggesting that the BOP cannot work to restore a defendant's competency while simultaneously obtaining Court authorization, and there is none. A contrary holding would lead to absurd results: a psychologist making significant strides at the conclusion of the original 120 period approaches would have to prophylactically apply to the Court for further authorization even though it might not be necessary. 4241(d) requires no advance authorization. The Court specifically authorized the restoration procedure. ECF No. 18. The BOP

applied for an extension under 4241(d). The Court authorized the extension. The defendant's motion should be denied.

### C.      Dismissal is not an appropriate remedy

This Court should likewise reject the suggestion that alleged violations of section 4241(d)'s durational limits may be remedied by the dismissal of the indictment. Dismissal of an indictment is a drastic and disfavored remedy, which "should only be utilized in the most egregious of cases," *United States v. Diaz*, 156 F. App'x 223, 224 (11th Cir. 2005), which typically requires a showing of prejudice. *See also United States v. Campagnuolo*, 592 F.2d 852, 865 (5th Cir. 1979). Furthermore, the IDRA does not identify dismissal of an indictment or criminal complaint as a remedy for a statutory violation, *see Magassouba*, 544 F.3d at 411, and the Constitution does not require the extraordinary remedy of dismissing an indictment on the basis of an alleged violation of section 4241(d)'s four-month time limit.[4]

Similarly, other district courts that have considered dismissal of an indictment in response to an alleged section 4241(d) transport delay have overwhelmingly declined to dismiss an indictment. *See Donnelly*, 41 F.4th at 1105; *United States v. Cottingham*, 2020 WL 4341720, at *4 (N.D. Ala. July 6, 2020), report and recommendation adopted, 2020 WL 4336018 (N.D. Ala. July 28, 2020) (holding approximately 6-month delay due to lack of bed space is insufficient to support dismissal of the indictment); *United States v. Quintana-Rivera*, 2020 WL 3578569, at *14 (D. Ariz. Mar. 26, 2020), report and recommendation adopted, 2020 WL 3574605 (D. Ariz. July 1, 2020) (finding that the delay of 132 days in commencing transport of defendant to Springfield did not violate his right to due process; comparable delays for other defendants in this district have

---

[4] It is worth noting that Congress did not prescribe dismissal of the indictment as a remedy for violation of any time limits imposed by section 4241(d), as it has, for example, in the context of violations of time limits imposed by the Speedy Trial Act. See 18 U.S.C. § 3162(a).

not been found to warrant dismissal); *United States v. Hatter*, 2015 WL 1511015, at *2 (S.D. Cal. Mar. 19, 2015) (dismissing a defendant's due process challenge where the defendant was detained upon finding that he posed a threat to the community, notwithstanding a three-month delay in starting treatment (a month of which was due to a clerical error); *United States v. Jones*, 2020 WL 7127321, at *3 (D. Mont. Dec. 4, 2020) (denying defendant's motion to dismiss and finding no due process violation in defendant's 122-day confinement while awaiting the start of his treatment at FMC Springfield); *see also United States v. Bravo-Cuevas*, 2022 WL 3042916, at *2 (D. Ariz. Aug. 2, 2022); *United States v. Leusogi*, 2022 WL 11154688, at *3 (D. Utah Oct. 19, 2022). Nevertheless, courts have also uniformly held that the remedy for such due process violations is not to dismiss the indictment as defendant requests in his motion—at least not right away. *United States v. Calderon-Chavez*, EP-22-CR-01664-DCG-1, 2023 U.S. Dist. LEXIS 148679 (W.D. TX, Aug. 18, 2023). Courts have instead unanimously agreed that the first step is to order the government to admit the defendant to a psychiatric facility by a specified date. *Id.*, (collecting cases). Only if the government misses that deadline may it then be appropriate to dismiss the indictment. *Id.*

As a practical matter, a dismissal of the indictment here without prejudice would simply send the litigation in this matter back to square one, in all likelihood returning a person about who the parties share competency related concerns to the end of the waitlist for a U.S. Bureau of Prisons hospital bed after he is re-indicted for the same offenses.

For reference, motions to dismiss under Federal Rule of Criminal Procedure 48(b), based on unreasonable delay, are typically evaluated in reference to: (1) the length of delay; (2) the reason for delay; and (3) when the defendant asserted his right; and (4) the prejudice to the defendant resulting from the delay. *United States v. Garcia*, 995 F.2d 556, 560 (5th Cir. 1993). Any delay at

issue here is neither purposeful nor the result of prosecutorial misconduct that involves demonstrable prejudice. *See United States v. Morin*, 308 F. Supp. 2d 835, 847 (M.D. Tenn. 2003). Accordingly, the defendant's motion for release and to dismiss the indictment should be denied.

## CONCLUSION

For the reasons given here, the government respectfully requests that the Court deny the defendant's Motion to Release Mr. Tarner and Dismiss Indictment should be denied.

Respectfully submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

By:     */s/ Emory V. Cole*
Emory V. Cole
PA. No. 49136
Assistant United States Attorney
Federal Major Crimes Section
United States Attorney's Office for D.C.
601 D Street, N.W.
Washington, D.C. 20530
E-mail: Emory.Cole@usdoj.gov
Telephone: (202) 252-7692