## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**,

**v.**

Case No. **1:20-cr-183-RCL**

**CODY MICHAEL TARNER**,

   *Defendant.*

## MEMORANDUM AND ORDER

The defendant, Cody Michael Tarner, seeks release from federal custody and dismissal of his indictment for alleged violations of the procedure and timeline established by the Insanity Defense Reform Act (IDRA). Because Mr. Tarner is no longer committed for competency evaluation or restoration, his motion is moot. Therefore, the Court will **DENY** Mr. Tarner's motion to dismiss. For the reasons discussed below, the Court will also **DENY** Mr. Tarner's motion to seal his motion to dismiss, and will **DENY** the Government's motion to file a sur-reply.

In addition, now that Mr. Tarner has given notice of his intention to present an insanity defense, the parties agree that the Court should order a psychiatric or psychological examination and report of Mr. Tarner. However, they disagree on whether the Court must order Mr. Tarner committed to the custody of the Attorney General of the United States for that evaluation. The Court concludes that committing Mr. Tarner to the custody of the Attorney General will likely result in lengthy delay, and therefore orders that Mr. Tarner be evaluated where he is currently housed, the D.C. Correctional Treatment Facility.

# I.   BACKGROUND

## A.  Factual and Procedural Background

The Government alleges that on July 15, 2020, Mr. Tarner approached three government vehicles parked at the United States Supreme Court, doused them with liquid, and then lit one of them ablaze.  *See* Compl., ECF No. 1, at 2.  However, the fire spread to Mr. Tarner himself, resulting in burns to about 40% of his body.  *See id.*  For these events, a grand jury indicted Mr. Tarner on one count of Arson, in violation of 18 U.S.C. § 844(i), and one count of Destruction of Government Property, in violation of 18 U.S.C. § 1361.  *See* Indictment, ECF No. 6.  The magistrate judge ordered Mr. Tarner detained pending trial.  *See* ECF No. 5.

### 1.  Mr. Tarner's Commitment for Competency Evaluation

At a status conference on February 12, 2021, the Court granted defense counsel's oral motion for a competency examination.  *See* ECF No 9, at 1.  The Court ordered that Mr. Tarner "be committed to the custody of the Attorney General of the United States pursuant to 18 U.S.C. § 4247(b) for a period not to exceed thirty days for placement in a suitable facility for a competency examination."  *Id.*  The Court also required the Government to update the Court every ten days on Mr. Tarner's placement and his transportation to this facility.  *Id.* at 2.

 On April 15, 2021, the Government reported that Mr. Tarner had been transported to the Butner Federal Correctional Complex in North Carolina.  *See* ECF No. 14.  In a letter filed under seal on April 22, 2021 (but dated April 15, 2021) the warden informed the Court that per C.D.C. and B.O.P. guidance, when Mr. Tarner arrived he was put in quarantine that would "last approximately 21 days."  *See* ECF No. 15.  The warden requested that the 30-day evaluation period begin on the date of Mr. Tarner's release from quarantine and be extended 15 days. *See id.*  At an April 22 status conference, the Court granted the request for an extension of time.

**2. Mr. Tarner's Commitment for Restoration**

Another letter from the warden was filed under seal on July 21, 2021 (but dated June 9, 2021), along with Mr. Tarner's competency evaluation. *See* ECF No. 17. The evaluator found Mr. Tarner not competent and recommended that he be committed to the custody of the Attorney General for restoration to competency. *See id.* at 13. Mr. Tarner was then transferred to the D.C. Jail. Def. Mot. for Immediate Transfer to Butner FMC, ECF No. 18, at 2.

On August 6, the Court held a status conference. On August 9, the Court issued an order in which it, "[a]fter holding a hearing, and with the consent of the Government and defense counsel," adopted the medical opinion in the competency evaluation report and found Mr. Tarner not competent. *See* ECF No. 18, at 1. Pursuant to 18 U.S.C. § 4241(d), the Court ordered Mr. Tarner committed to the custody of the Attorney General, to be "hospitalize[d] for treatment in a suitable facility 'for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.'" *See id.* (quoting 18 U.S.C. § 4241(d)(1)). From the date of the Court's Order until November 17, 2021, the Government filed nine status reports on Mr. Tarner's pending transportation and evaluation.

On November 18, 2021, Mr. Tarner objected to the delay by filing a "Motion for Immediate Transfer to Butner FMC." *See* ECF No. 18. Until the present motion, this was the only time Mr. Tarner objected to the timing of his transport, evaluation, or treatment. Finally, on January 14, 2022 the Government reported that Mr. Tarner had been transferred to Butner the previous day. *See* ECF No. 31. In May 2022, the warden informed the Court that Mr. Tarner's restoration evaluation was complete. *See* ECF No. 32-1. Although the attached competency report assessed Mr. Tarner to be not competent, the evaluators reported "some improvement in [his] symptoms,"

stated that he would likely be restored to competency in the future, and asked for an additional 120 days to restore Mr. Tarner to competency. *See* ECF No. 32-1, at 14. The letter and report were filed on the Court's docket on July 8 and on July 29 the Court issued an order granting a 120-day treatment period, *see* July 29 2022 Order, ECF No. 33. It did so pursuant to 18 U.S.C. § 4241(d)(2)(A). That provision authorizes the Attorney General to hospitalize a mentally incompetent defendant for treatment in a suitable facility for an additional period of time until defendant's "medical condition is so improved that trial may proceed" if a court finds a "substantial probability that within such additional period of time [the defendant] will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(2)(A).

On November 10, 2022, the warden informed the Court that Mr. Tarner's competency had been restored. *See* ECF No. 34. On December 5, the parties submitted a joint status report requesting that Mr. Tarner be returned to the District of Columbia. *See* ECF No. 35. On January 11 the Court held a status conference and on January 23 it issued an order finding Mr. Tarner competent. *See* ECF No. 37. Currently, Mr. Tarner is housed at the D.C. Correctional Treatment Facility. Def. Proposed Order, ECF No. 64, at 2.

**B. The Present Dispute**

On August 22, 2023 Mr. Tarner gave notice of his intention to present an insanity defense at trial. *See* ECF No. 47. On October 2, the Court held a status conference in which it vacated the trial date and ordered the parties to submit a proposed scheduling order concerning Mr. Tarner's insanity defense. On October 18, the Government requested that the Court order Mr. Tarner to be committed to the custody of the Attorney General for an insanity evaluation pursuant to 18 U.S.C. § 4242. *See* Gov. Proposed Order, ECF No. 63. Mr. Tarner filed an opposition, objecting only to the commitment of Mr. Tarner to the custody of the Attorney General and instead

requesting that he be evaluated at the D.C. Correctional Treatment Facility.  *See* Def. Proposed Order.  The Government filed a response.  *See* Gov. Response to Def. Proposed Order, ECF No. 67.  Mr. Tarner filed a reply.  *See* Def. Reply to Gov. Response to Def. Proposed Order, ECF No. 68.

In addition, on October 20, 2023 Mr. Tarner moved for his release from federal custody and dismissal of the indictment for alleged violations of IDRA's procedures and time limits.  *See* MTD, ECF No. 65.  He argues that the Government held him at Butner for longer than the permitted time for both his initial competency evaluation and his later restoration.  *See* MTD at 10, 13.  He also contends that the Court found him not competent and committed him for restoration without holding the "hearing" required by 18 U.S.C. § 4241(a).  Specifically, he finds fault in the August 6, 2021 status conference.  At the status conference, counsel for the Government and defense agreed that the Court should adopt the finding of the competency report, which the Court later did in an order.  Mr. Tarner argues that although he personally "object[ed] to the finding of incompetence,"  the Court failed to afford him "an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing"  as provided by Section 4247(d).  *See* MTD at 12.  The Government filed a response. *See* Gov. Response to MTD, ECF No. 66.  Mr. Tarner filed a reply.  *See* Def. Reply to Gov. Response to MTD, ECF No. 69.  The Government filed a motion for leave to file a sur-reply.  *See* Gov. Mot. for Sur-Reply, ECF 70.

The matters are now ripe for review.

## II.    ANALYSIS

### A.  Mr. Tarner's Motion for Release From Custody and Dismissal of the Indictment Is Moot

Since Mr. Tarner has already been evaluated, restored to competency, and released from competency-related commitment under IDRA, his motion is moot.[1]

"Under Article III of the United States Constitution," a federal court "'may only adjudicate actual, ongoing controversies.'"  *D.C. v. Doe*, 611 F.3d 888, 894 (D.C. Cir. 2010) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)).  "Under the mootness doctrine, we cannot decide a case if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  *Reid v. Hurwitz*, 920 F.3d 828, 832 (D.C. Cir. 2019) (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)).  Indeed, "[i]f an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–478 (1990)).  The D.C. Circuit has explained that "[t]he party seeking jurisdictional dismissal must establish mootness, while the opposing party has the burden to prove that a mootness exception applies."  *Reid*, 920 F.3d at 832 (citing *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010)).

In a criminal case, challenges to alleged constitutional violations that occur before trial may be mooted by later events.  For instance, in *United States v. Sanchez-Gomez*, the Supreme Court recognized that defendants' challenge to their pretrial detentions was moot because they were "no longer in pretrial custody."  *See* 138 S. Ct. 1532, 1540 (2018); *see also United States v.*

---

[1] The Government further argues that "[t]he defendant's acquiescence in, and failure to object to, specific periods of delay in transporting and evaluating the defendant operate to bar his claims here" under doctrines of judicial estoppel and waiver or forfeiture, as well as mootness.  Gov. Response to MTD at 15.  Because the Court concludes that Mr. Tarner's claim is moot, it declines to reach these alternative grounds.

*Young*, 428 F. App'x 9, 10 (D.C. Cir. 2011) ("Appellant claims that his pretrial detention violated his First, Fifth, Sixth, Eighth, Ninth, and Fifteenth Amendment rights, but appellant has been convicted and his pretrial detention has now ended. Consequently, these issues have been rendered moot."); *Maydak v. United States*, 98 F. App'x 1, 3–4 (D.C. Cir. 2004) (concluding that the appellant's claims for injunctive and declaratory relief concerning his treatment in BOP custody "are moot as he has been released from BOP custody"); *United States v. Askia*, 893 F.3d 1110, 1122 (8th Cir. 2018) (holding that the defendant's challenge to an alleged constitutional violation at the pretrial detention hearing was moot because the issue "will have no direct consequence on [the defendant] now" since "[h]is pretrial detention has concluded"). Similarly, in *Murphy v. Hunt*, the Supreme Court concluded that the defendant's "claim to *pretrial* bail was moot once he was convicted." 455 U.S. 478, 481–82 (1982). The Court explained that "[t]he question was no longer live because even a favorable decision on it would not have entitled Hunt to bail" and "Hunt no longer had a legally cognizable interest in the result in this case" since "[h]e had not prayed for damages nor had he sought to represent a class of pretrial detainees." *Id.*

This general principle applies to the competency context as well. Courts of Appeal including the D.C. Circuit have held that a commitment order entered under § 4241(d) is immediately appealable precisely because by the time of a final judgment, it would be moot and thus effectively unreviewable. *See United States v. Weissberger*, 951 F.2d 392, 395–97 (D.C. Cir. 1991) ("If [the defendant] is declared competent and the trial proceeds, post-confinement review will provide no relief for the loss of liberty associated with the competency evaluation."); *United States v. Gold*, 790 F.2d 235, 239 (2d Cir. 1986) ("If the defendant were eventually found competent to stand trial and were convicted, the commitment order could be reviewed on appeal from his conviction; but the matter of the relief to be granted if the order were found to have been

erroneous would be moot."); *United States v. Friedman*, 366 F.3d 975, 979 (9th Cir. 2004) ("Several of our sister circuits have found that a commitment order entered pursuant to § 4241(d), like the one at issue here, would be effectively unreviewable on appeal from a final judgment.") (citing *United States v. Ferro*, 321 F.3d 756, 760 (8th Cir. 2003); *United States v. Filippi*, 211 F.3d 649, 650-51 (1st Cir. 2000); *United States v. Boigegrain*, 122 F.3d 1345, 1349 (10th Cir. 1997) (en banc); *United States v. Davis*, 93 F.3d 1286, 1289 (6th Cir. 1996); *Weissberger*, 951 F.2d at 396; *Gold*, 790 F.2d at 239).

So, just as a defendant's challenge to pretrial detention is moot once the defendant is "no longer in pretrial custody," *see Sanchez-Gomez*, 138 S. Ct. at 1540, a defendant's challenge to his competency-related commitment is moot once the defendant is no longer committed. *See United States v. Calderon-Chavez*, No. EP-22-CR-01664-DCG-1, 2023 WL 5345582, at *1, 13 (W.D. Tex. Aug. 18, 2023) (finding a due process violation when nine months had passed since commitment order under 18 U.S.C. § 4241(d)(1) without hospitalization, but concluding that if the defendant is evaluated in compliance with the district court's order, the due process challenge will become moot); *United States v. Hatter*, No. 14-CR-1811-GPC, 2015 WL 1511015, at *2 (S.D. Cal. Mar. 19, 2015) ("Hatter was transferred to Butner . . . and is currently receiving restorative treatment. As such, the Court finds that any due process challenge based upon any delay while Hatter awaited restorative treatment is moot."); *United States v. Berard*, No. 22-CR-088-01-LM, 2023 WL 3178793, at *8 (D.N.H. May 1, 2023) ("Berard has already been hospitalized. Therefore, the government has provided the remedy — hospitalization — that courts most commonly order when the government has failed to timely transport a committed defendant to a hospital. And neither this court nor Berard has been able to identify any case where a court has dismissed an indictment for lack of a timely transport *after* the government has admitted the defendant to a

suitable facility."); *United States v. Vanarsdale*, No. 22-10103-JWB, 2023 WL 5094011, at *3 (D. Kan. Aug. 9, 2023) ("[T]he remedy routinely issued by courts is an order requiring the government to admit the defendant to a suitable facility within a specified time period . . . . Such a remedy is not necessary here as [the d]efendant has already been transferred to the facility." (citations omitted)).

Here, the Government has met its burden of showing that Mr. Tarner's claim is moot, as he is no longer hospitalized for a competency evaluation or restoration, or awaiting transport for either.  Nor is he seeking damages or to represent a class.  *See Murphy*, 455 U.S. at 481–82.  He thus "no longer ha[s] a legally cognizable interest" in the outcome of his motion, *id.*, and the Court is powerless to act on a merely academic question.  At this stage, it is "impossible for a court to grant any effectual relief whatever" to Mr. Tarner.  *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)).  Even if he is correct that IDRA was violated, the Court could not provide relief by ordering his immediate hospitalization, since he has already been hospitalized, or by revisiting its finding of incompetency, since he has already been restored to competency.

Although Mr. Tarner bears the burden of establishing an exception to the mootness doctrine, *Reid*, 920 F.3d at 832, he has made no attempt to argue that an exception applies.  His motion for release and dismissal of the indictment must therefore be denied as moot.

**B. The Court Will Order Mr. Tarner to Be Evaluated at the D.C. Correctional Treatment Facility**

Applying the plain meaning of 18 U.S.C. § 4247(b), the Court must order an examination of Mr. Tarner, but it has discretion to order him committed to the custody of the Attorney General or another entity.  Given that committing Mr. Tarner to the Attorney General presents a significant

risk of delay that might jeopardize his mental health, the Court will not order him committed to the Attorney General's custody.

18 U.S.C. § 4242(a) provides that upon the filing of a notice of insanity defense, "the court, upon motion of the attorney for the Government, shall order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)." 18 U.S.C. § 4242(a). Such an examination is meant to establish whether at the "time of the commission of the acts constituting the offense," the defendant was "insane," § 4247(c)(4)(B), meaning that at such time "the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts," *see* § 17. Section 4247(b) provides that pursuant to the Court's order under Section 4242, "the court may commit the person to be examined for a reasonable period . . . but not to exceed forty-five days, to the custody of the Attorney General for placement in a suitable facility." 18 U.S.C. § 4247(b). The parties agree that the Court must order an examination, but they disagree about whether the Court is required to commit the defendant to the custody of the Attorney General or whether instead the Court may order an evaluation elsewhere.

Mr. Tarner's reading of the statute is correct. The Fifth Circuit has considered this precise question and held that "[r]ead in context, the statutory language commands the district court to order an examination but permits it either to commit the defendant to the custody of the Attorney General for that purpose or to order that the examination be made in some other manner." *See In re Newchurch*, 807 F.2d 404, 410 (5th Cir. 1986); *see also United States v. McKown*, 930 F.3d 721, 729 (5th Cir. 2019) (reaffirming the holding of *Newchurch*). This conclusion follows from Section 4247(b)'s "use of the permissive word 'may' as to the manner of the

examination . . . compared to the use of the mandatory word, 'shall,' in directing that an examination of some kind be made," *Newchurch*, 807 F.2d at 410. The plain meaning of Section 4247(b) is that the Court *must* order an examination, and it *may* order commitment to the custody of the Attorney General. But the Government has dismissed Mr. Tarner's argument without offering a single reason to depart from the plain meaning of the statutory text. *See* Gov. Response to Def. Proposed Order at 3. It instead offers *ipse dixit*. *See id*. (stating "the defendant's arguments are without merit and border on a fundamental misunderstanding of applicable legal principles and constitutional mandates outlined *supra*" without providing any reasons for why that is so).

The Court therefore has discretion to commit Mr. Tarner to either the custody of the Bureau of Prisons or some other entity. When the choice is between commitment to the custody of the Attorney General and examination on an outpatient basis, several circuits have held that a court should not lightly choose the former. *See Newchurch*, 807 F.2d at 411 ("[B]efore committing a defendant, the court [must] determine, on the basis of evidence submitted by the government, subject to cross examination, and to rebuttal by the defendant, that the government cannot adequately prepare for trial on the insanity issue by having the defendant examined as an outpatient."); *United States v. Deters*, 143 F.3d 577, 584 (10th Cir. 1998) ("In ordering commitment pursuant to 18 U.S.C. § 4241, a 'district court should make findings of fact concerning the need for commitment' . . . ." (quoting *Newchurch*, 807 F.2d at 412); *United States v. Neal*, 679 F.3d 737, 742 (8th Cir. 2012) (remanding because of the district court's failure to "require the government to present evidence to justify the inpatient commitment, seriously consider the defendant's alternative request for an outpatient examination, or make findings of fact concerning the need for commitment"). Indeed, "courts have ordered outpatient evaluations where the government has failed to articulate sufficiently compelling reasons to order a custodial

examination." *United States v. McDonald*, No. CRIM. 09-656-01 SDW, 2012 WL 4659242, at *2 (D.N.J. Oct. 1, 2012) (collecting cases).  In this case, the choice is between commitment to the custody of the Attorney General or examination at the Correctional Treatment Facility in Washington, D.C.  But the principle remains that in issuing an order under Sections 4242 and 4247, the court should "fetter[] [the defendant's] freedom in the least restrictive manner."  *See Neal*, 679 F.3d at 742.

The tortuous history of this case indicates that if the Court committed Mr. Tarner to the custody of the Attorney General, months of needless delay would follow.  When the Court re-committed Mr. Tarner to the custody of the Attorney General for restoration, he languished for five months awaiting his ride to FMC Butner.  *See* ECF 18; ECF No. 30.  Now that Mr. Tarner has been restored to competency, he warns another lengthy delay may jeopardize his mental health to the point that he becomes once again incompetent to stand trial.  *See* Def. Proposed Order at 3. Indeed, Mr. Tarner's competency evaluator "strongly recommended that once restored to competency, court proceedings are scheduled closely to his restoration" because of a "concern that Mr. Tarner may decompensate if his return to court is prolonged in holdover facilities."  *See* Tarner Forensic Evaluation, ECF No. 17, at 15.  Against this risk of delay and a return to incompetency, the Government does not offer any reason to commit Mr. Tarner to the custody of the Attorney General.  For instance, the Government does not suggest that Mr. Tarner cannot be evaluated at the D.C. Correctional Treatment Facility or that FMC Butner would be better in any way.

The Court will not roll the dice on Mr. Tarner's mental health when it does not have to.  It will therefore order that Mr. Tarner receive psychiatric or psychological examination to be conducted at the D.C. Correctional Treatment Facility.

**C.  The Court Will Deny Mr. Tarner's Motion to Seal**

Mr. Tarner filed his motion for release and dismissal under seal "because it references numerous documents pertaining to Mr. Tarner's competency and mental health that remain sealed on the docket, as well as the transcripts from sealed proceedings pertaining thereto."  MTD at 1 n.1.  The Government objects on the basis that neither Mr. Tarner's motion nor the Government's response contains personal identifying information or confidential mental health information.  Gov. Response to MTD at 2.

The D.C. Circuit has explained that the "common-law right of public access to judicial records 'is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch.'"  *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017)).  There is therefore "a 'strong presumption in favor of public access to judicial proceedings,' including judicial records." *Leopold*, 964 F.3d at 1127 (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980)). In an appropriate case, "that presumption may be outweighed by competing interests*." Id.*

But while Mr. Tarner's motion generally refers to the fact that he has been treated for mental health issues, it does not include any confidential information about his treatment or specific condition.  And the fact that Mr. Tarner was found incompetent and later restored to competency is already public, as the Court has issued unsealed orders finding Mr. Tarner incompetent, ECF No. 18, and then restored to competency, ECF No. 37.  Accordingly, the Court will deny Mr. Tarner leave to file his motion under seal.

### D.  The Court Will Not Consider the Government's Sur-Reply

The Government's purported sur-reply addresses Mr. Tarner's arguments concerning whether the Government violated IDRA and, if so, what should be the appropriate remedy.  *See* Gov. Sur-Reply, ECF No. 70-2.   The Court will deny the Government's motion for leave to file the sur-reply because it addresses the merits of a matter that is moot, and would therefore not be helpful to the Court.

Although sur-replies are generally disfavored, "[t]he decision to grant or deny leave is 'committed to the sound discretion of the Court.'"  *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 85 (D.D.C. 2014) (quoting *Lu v. Lezell,* 45 F.Supp.3d 86, 91 (D.D.C. 2014)).   "A district court should consider 'whether the movant's reply in fact raises arguments or issues for the first time, whether the nonmovant's proposed surreply would be helpful to the resolution of the pending motion, and whether the movant would be unduly prejudiced were leave to be granted.'"  *Doe*, 69 F. Supp. 3d at 85 (quoting *Banner Health v. Sebelius*, 905 F.Supp.2d 174, 187 (D.D.C. 2012)).

Because Mr. Tarner's motion is moot, the Court will not reach the merits of his IDRA argument, nor will it determine the appropriate remedy for an IDRA violation.  The Government's sur-reply therefore would not 'be helpful to the resolution of the pending motion."   *Id*. Accordingly, the Court will not consider the Government's sur-reply.

### III.    CONCLUSION

For the foregoing reasons:

It is hereby **ORDERED** that the Defendant Mr. Tarner's Motion [ECF No. 65] to Seal his Motion for Release from Custody and Dismissal of the Indictment is **DENIED**, and it is further

**ORDERED** that the Defendant Mr. Tarner's Motion [ECF No. 65] for Release from Custody and Dismissal of the Indictment is **DENIED**, and it is further

**ORDERED** that the Government's Motion [ECF No. 70] for Leave to File a Sur-Reply is **DENIED**.

As the Defendant gave notice on August 22, 2023, pursuant to Federal Rule of Criminal Procedure 12.2, that he intends to present a defense of insanity in this case:

It is **ORDERED** that pursuant to 18 U.S.C. § 4242, a psychiatric or psychological examination be conducted by a licensed or certified psychiatrist or psychologist, and it is further

**ORDERED** that the government shall ensure such an evaluation occurs within twenty days of this order, and it is further

**ORDERED** that a psychiatric or psychological report be filed with the Court, pursuant to the provisions of 18 U.S.C. § 4247(b) and (c), and it is further

**ORDERED** that the examination shall be conducted at the Correctional Treatment Facility in Washington, D.C., and it is further

**ORDERED** that the examination shall determine pursuant to 18 U.S.C. § 17 whether at the "time of the commission of the acts constituting the offense" —July 15, 2020 — "the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts," and it is further

**ORDERED** that the examination shall be conducted by a licensed or certified psychiatrist and/or psychologist, or more than one such examiner, and it is further

**ORDERED** that pursuant to § 4247(c), the report shall be prepared by the examiner and shall be filed under seal with the Court with copies provided to counsel for the defendant and to the attorney for the Government.   Pursuant to § 4247(c), the report shall include: (1) the Defendant's history and present symptoms; (2) a description of the psychiatric, psychological, and medical tests that were employed and their results; (3) the examiner's findings; and (4) the

examiner's opinions as to diagnosis, prognosis, and whether at the time of his criminal offense the Defendant was suffering from a mental disease or defect such that he was unable to appreciate the nature and quality or the wrongfulness of his acts.

      **IT IS SO ORDERED.**

Date: _11/29/23_

_Royce C. Lamberth_
Royce C. Lamberth
United States District Judge